# Wytheville.

## MERRITT v. BUNTING.

### June 13, 1907.

1. DEEDS—*Description of Land—Case at Bar—Vendor and Purchaser.*—
   A deed conveying land, in order to be valid against a subsequent
   purchaser, must so describe and identify the property conveyed as
   to afford the means, with the aid of extrinsic evidence, of ascer-
   taining with accuracy what is conveyed and where it is. In the
   case at bar, the land conveyed was described as situated on Chinco-
   teague Island and embraced within certain courses and distances,
   but no starting point or ending point is given, and hence the location
   of the land could not have been ascertained, and the deed is in-
   operative as against a subsequent purchaser for value even if he
   had notice of its existence.

2. NEW TRIAL—*Misconduct of Party Subsequent to Verdict.*—Where it ap-
   pears that a defendant in an action at law, immediately after a ver-
   dict in his favor, stated that he had never lost a case and never
   expected to if it was left to a jury, and gave five dollars to each of
   the jurors, and both he and they were fined for contempt, and he
   thereupon paid the fine assessed upon several of the jurors, and it
   also appears that he attempted to bribe an important witness for
   the plaintiff, the trial court should set aside the verdict rendered in
   his favor, notwithstanding both defendant and jurors had been
   punished for their contempt.

Error to a judgment of the Circuit Court of Accomac county
in an action of ejectment. Judgment for the defendant. Plain-
tiff assigns error.

*Reversed.*

The following is a copy of the deed from Governor Holliday, referred to in the opinion of the court:

"Fred. W. M. Holliday, Esquire, Governor of the Commonwealth of Virginia; To all to Whom these Presents shall come—Greeting:

"Know ye, that in conformity with a survey made on the twenty-second day of November, one thousand, eight hundred and seventy-six, by virtue of Land Office Treasury Warrant No. 30,034, there is granted by the said Commonwealth unto John W. Bunting a certain tract or parcel of land, containing twenty-six and nine one hundredths acres, lying and being in the County of Accomack, on Chincoteague Island, and bounded as follows, to-wit:

"Beginning at 'a' thence S. 50° E., 7.50 chains to 'b,' thence N. 40° E., 24.00 chains to 'c,' thence N. 27° E., 2.50 chains to 'd,' thence N. 13° W., 5.00 chains to 'e,' thence N. 85° W., 15.00 chains to 'f,' thence N. 49° E., 15.50 chains to 'g,' thence N. 31° W., 1.00 chains to 'h,' thence S. 54½° W., 20.80 chains to 'i,' thence S. 75½° E., 17.60 chains to 'j,' thence S. 48° W., 24.00 chains to the beginning, with its appurtenances. To HAVE AND TO HOLD the said tract or parcel of land, with its appurtenances, to the said John W. Bunting and his heirs forever.

"In witness whereof, the said Fred. W. M. Holliday, Esquire, Governor of the Commonwealth of Virginia, hath hereunto set his hand, and caused the lesser seal of the said Commonwealth, to be affixed, in Richmond, on the second day of April, in the year of our Lord, one thousand, eight hundred and seventy-eight, and of the Commonwealth, the one hundredth and second.

(SEAL OF VA.) FRED. W. M. HOLLIDAY."

*Jno. S. Parsons* and *G. Walter Mapp,* for the plaintiff in error.

*S. K. Powell* and *J. H. Fletcher,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

D. M. Merritt, plaintiff in error here, defendant in the court below, on the 12th day of June, 1905, pursuant to the statute commonly spoken of as the "Oyster Laws," obtained an assignment from the oyster inspector of District No. 1, Accomac county, of two parcels of oyster-planting ground, aggregating 24.62 acres, situated on Little Assateague Bay, near Chincoteague Inlet in said county; he having paid the fees and done all required of him by law, to entitle him to the assignment.

At the October rules, 1905, of the Circuit Court of Accomac county, John W. Bunting, defendant in error here, brought an action of ejectment against Merritt to recover the possession of certain oyster-planting ground embraced within certain lines given within the declaration filed, which include the 24.62 acres in the possession and occupancy of Merritt, by virtue of his assignment from the oyster inspector of District No. 1, Accomac county.

At a trial of the cause, at a special term of the circuit court, held February 16, 1906, a verdict was rendered by the jury in favor of the plaintiff for all the land embraced within the lines given in his declaration, which verdict the circuit court, at its March term, 1906, refused to set aside, and judgment was entered thereon in favor of the plaintiff for the possession of the 24.62 acres, held and occupied by the defendant Merritt, under his aforesaid assignment from the oyster inspector, the plaintiff, in open court, having disclaimed all right, title and interest in and to so much of the land embraced in the verdict as had been theretofore assigned to other parties by the oyster inspector of District No. 1, Accomac county, and containing 4.55 acres. It is to that judgment this writ of error was awarded.

To sustain his right to the possession of the lands demanded

in his declaration, Bunting relied, in part, upon three several deeds introduced in evidence, conveying to him certain lands in Accomac county, adjacent to or bordering on Little Assateague Bay, and also a grant from Fred. W. M. Holliday, Governor of Virginia, for 26.09 acres, dated April 2, 1878, which had never been recorded in Accomac county, to the introduction of which grant Merritt objected, but his objection was overruled, and to this ruling, he duly took an exception, and made it a part of the record, which exception constitutes his first assignment of error in this court.

To sustain his contention that, as a riparian owner, he also owned the whole of Little Assateague Bay, it was necessary for Bunting to establish his ownership of the lands adjacent to the bay on all of the shore sides thereof, and without the benefit of the grant from the Governor of the Commonwealth of April 2, 1878, he would have failed to show that he was the owner of all the lands situated on the bay and extending down to low water mark. In other words, Bunting's claim is, that he owned the whole of the bay by virtue of owning the high ground around the bay; that his title as owner of the ground around the bay extended to low water mark; that the bay ebbed bare; and that he, therefore, owned the whole of the bay.

The objection to the introduction of the grant from the governor of the commonwealth, which was necessary to Bunting in order to show title to the high land on one side of the bay, was (1), that the patent in question had not been recorded in Accomac county prior to Merritt's becoming the purchaser of the land for value, and was void as to him, he having neither notice nor knowledge of the grant at the time he took his assignment of the land in question from the oyster inspector, as before stated; and (2) that the description of the land embraced in the grant is so vague and indefinite, that no one can locate the same from the description given therein.

Whether or not it was necessary to record this grant in Accomac county, in order that it should operate as notice to sub-

sequent purchasers or incumbrancers of the land intended to
be granted, we need not determine, as the grant, in our judg-
ment, is too vague and indefinite as to the location of the land
it purported to grant, to be considered as sufficient to give
notice of the rights of the patentee, even if a subsequent pur-
chaser or incumbrancer of the land had actual notice of it. It
is true, as counsel for Bunting contend, that if the identity of
the premises mentioned in the grant can be ascertained by ex-
trinsic testimony, the grant would be valid; but, as we shall
presently see, the authorities relied on, in support of that con-
tention, do not apply to a case like this, where there is no
description in the grant, even with extrinsic evidence sufficient
to enable a party interested to identify the premises intended
to be granted.

In this case, there is nothing in the grant to show where the
land intended to be granted is located, except that it is on Chin-
coteague Island, and embraced within certain courses and dis-
tances. There is no starting point or ending point given.
Therefore, by the grant, any starting point might have been
taken, and the courses and distances run therefrom, provided
the land thus located was situated on Chincoteague Island.

The county surveyor of Accomac county, while testifying for
the defendant Merritt, was shown the grant from the Governor
of Virginia to Bunting for 26.09 acres, and asked if, from the
description given in that grant, he could locate the land sup-
posed to be granted. He replied that he could not, as there
was nothing in the grant to show where the land was located,
except that it was on Chincoteague Island, and was embraced
within certain courses and distances, no starting point or end-
ing point being given. He does, however, testify that he did
locate the land embraced within the grant for Bunting, but
that Bunting took him to this Little Assateague Bay and told
him that the survey extended around the eastern side of the
bay; that the surveyor, Bagwell, started at a point opposite
the canal, which empties into Chincoteague Channel, and then

surveyed around the bay. But he further testifies that the survey made by Bagwell could not have started at that point, for, if it had started there, laying off the grant, and running the courses and distances given in the grant, a great part of the land would have been in said bay, and, further, that the said survey could not have started at that point, at which one of the chain carriers, at the original survey, claimed it did, to-wit, at a point about half way between the east mouth of the canal, emptying into channel, and Little Island in Assateague Bay, because, running the courses and distances given in the grant, the land, or a greater part of it, would have been located in the bay. He gives other reasons for the conclusion that no survey had been made or could have been made, locating the land embraced in the grant adjacent to Assateague Bay from the description given in the grant, but that such surveys as had been made were made by the arbitrary direction of Bunting himself.

Even a recorded instrument, conveying land, to be sufficient to give notice under the registry laws to a subsequent purchaser or incumbrancer, must so describe and identify the property conveyed, as to afford the means of ascertaing with accuracy what and where it is.

In *Florance* v. *Morien,* 98 Va. 35, 34, S. E. 891, Buchanan, J., says: "The recorded instrument is sufficient to give notice under the registry laws, if the property be so described and identified that a subsequent purchaser or encumbrancer would have the means of ascertaining with accuracy what and where it was, and the language used be such that if he should examine the instrument itself, he would obtain notice of all the rights which were intended to be created or conferred by it." See also *Reid* v. *Rhodes,* 106 Va. 701, 56 S. E. 722.

In *Mundy* v. *Vawter,* 3 Gratt. 494, a conveyance of "all the estate, both real and personal," to which the grantor "is entitled in law or equity, in possession, remainder or reversion," was held valid to pass the grantor's whole estate as between the

grantor and grantees, but that the registry of such a deed conveying land by such general description is not notice in law to a subsequent purchaser from the grantor of the existence of said deed; that actual notice of such a deed and of its contents would not affect a subsequent purchaser, unless he had notice that the land purchased by him was embraced by the deed; and that the proof of such notice must be such as to affect the conscience of the purchaser, and is not sufficient if it merely puts him upon inquiry; it must be so strong and clear as to fix upon him the imputation of *mala fides*. The opinion in that case was by Baldwin, J., and the reasoning applied there is entirely applicable to the case at bar.

As we said in the outset, if Merritt had had actual notice of the grant in question, it would not have been sufficient to charge him with notice of any right in Bunting to the land which is in controversy in this suit. We are, therefore, of opinion that the circuit court erred in not rejecting the grant when offered in evidence; and for this error, its judgment must be reversed and a new trial awarded.

If a new trial in this case were not awarded for the reason stated, we would feel constrained to award it for the following reasons:

Just after the trial of the case, to a remark made to him by a friend, "Well, Captain, I thought you were going to lose your case," Bunting replied: "But I didn't do it, did I? I never lost a case in this court and I never expect to, if it is left to a jury." Bunting went immediately out of the court-house and followed up the jurors, handing to each of them, who had not left for their homes $5.00, and sent $5.00 to each of those who had left. Afterwards, upon a rule awarded by the judge of the circuit court against Bunting and the jurors, to show cause why they should not be fined for contempt in the giving by Bunting and the receiving by the jurors each of $5.00, in the manner and under the circumstances stated, Bunting was fined $25.00 and four of the jurors $5.00 each for the alleged

contempt; whereupon Bunting stepped up and requested to be and was allowed the privilege of paying the fines imposed upon the four jurors.

After the application by Merritt to the oyster inspector for the assignment of the oyster grounds in question had been posted according to law, Bunting, upon learning of the posting, complained to the oyster inspector that the land applied for belonged to him, and said to the inspector that if the land did not belong to him, he was willing to pay taxes on it himself, and in conversations with the inspector and by letters to him, it is clear that he tried to bribe the inspector to assign the land to him (Bunting) instead of to Merritt. The inspector testified that Bunting took him off in a room to himself in a hotel on Chincoteague Island, and told him that he was not trying to bribe him at all, but there were tricks in all trades, and then went on to relate that he used to be running a blockade during the Civil War, and would enter and go out of New York harbor without any trouble, when the other fellows could not do it; that he took along with him some $10.00 bills. To this the inspector, Taylor, replied: "Well, Captain Bunting, your $10.00 bills will not get you into this harbor." Bunting did not deny this on the witness stand, but admitted having written to the inspector, "offering to give him as much as anybody else would to assign him (Bunting) the grounds; stating that the reason he did this was because he had been told that, in order to get an assignment of the grounds, he would have to "grease Taylor a little;" that subsequently he saw Taylor on Chincoteague Island, and told him he was in a position to give him as much to assign the grounds to him as anyone else, if he were being paid anything.

Such conduct on the part of a litigant and jurors casts a cloud of suspicion over the result of the trial, and to allow a litigant to reap the benefits of a verdict obtained under such suspicious circumstances, would, as it appears to us, be a reproach upon the administration of justice in this state. It is

true the learned judge below very promptly and properly attempted to punish and to reprove the parties engaged in this improper conduct, but that does not, in our opinion, reach the evil, which should be uprooted, even if it required not only the punishment of the parties implicated, but the setting aside of any verdict rendered under such circumstances.

A Captain Hill, a friend of Bunting, testified that, though Bunting was a wealthy man, and abundantly able to give such "tips" as $5.00 to jurors, who had rendered a verdict in his favor in a doubtful case, he was rather a close man, and, although he had been on the island with Bunting and known him for a long time, he had never heard of his giving $5.00 to anybody before, not even to the poor. This witness also testifies that he had heard rumors around that Bunting had talked with a certain one of the jurors during the trial, but said he did not know who he had heard make this statement.

The admission of Bunting is, that when he had reason to expect litigation with Merritt over the right to lease and occupy, under the statute, the oyster-planting grounds involved in this case, he wrote the oyster inspector, whose duty it was to assign the grounds, as required by the statute, and who was in a position to give Bunting, as he thought, an undue advantage over Merritt, "offering to give him (Inspector Taylor) as much as anybody else would to assign him, Bunting, the grounds, stating that the reason he did this was because he had been told, that in order to get an assignment of the grounds, he would have to 'grease Taylor a little';" and further, that subsequently, he told Taylor in person that he was in a position to give him as much to assign the grounds to him, Bunting, as any one else, "if he was being paid anything." In other words, Bunting admits that he was, by illegal methods—bribery—seeking to obtain through this public official, the oyster inspector, an undue advantage over Merritt in an anticipated litigation.

This conduct on Bunting's part is not only well calculated to cause distrust in the integrity of our courts, which have been

for centuries regarded as the great bulwark of the liberties and immunities of the citizen against encroachment from any quarter, but, when considered together with the other facts and circumstances appearing in the record, arouses such a grave suspicion that something other than the law and the evidence influenced the jury in arriving at their verdict as to require that such conduct on the part of any litigant be condemned in the severest terms, so that it may be understood that a verdict obtained under such circumstances, will not be sanctioned by a court of justice.

We are of opinion, for these reasons, as well as for the error in admitting at the trial the improper evidence adverted to, that the judgment of the circuit court should be reversed and annulled, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*