# Richmond

## DELMAR MOCK v. LUCILLE COPENHAVER AND JOHN F. COPENHAVER.

January 14, 1946.

Record No. 2937.

Present, All the Justices.

The opinion states the case.

*H. E. Widener, D. B. Rouse* and *George M. Warren*, for the plaintiff in error.

*T. L. Hutton* and *James M. Barker*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

David Mock died intestate in 1907, seized and possessed of three tracts of land located in Washington county, Virginia, hereinafter referred to as the Price place, the Buhrman place, and the home place. The first two farms adjoined each other. The home place was three miles distant from them, and is not involved in this proceeding.

David Mock was survived by his widow, Elizabeth Mock, and two infant children, Delmar Mock, a son, and Lucille Mock, a daughter, his only heirs-at-law and next of kin. Mrs. Mock, the widow, subsequently married R. H. Sutherland about 1910 or 1911. Mrs. Elizabeth (Mock) Sutherland died in 1939. Lucille Mock, the daughter, married John F. Copenhaver about 1922.

The home place of David Mock was sold in two certain consolidated chancery causes instituted, in the Circuit Court of Washington county, to settle his estate and assign dower to his widow, and was purchased by R. H. Sutherland. In that proceeding Delmar and Lucille Mock were infant defendants.

The Buhrman place was sometimes called "The Virginia Broyles Land." It was conveyed to David Mock April 22, 1905, and described as containing 147 acres, more or less. The Price place was conveyed to David Mock on April 24,

1907, and was described as containing 156 acres, more or less.

Mrs. Elizabeth (Mock) Sutherland, hereinafter referred to as Mrs. Sutherland, desired to have her dower in the lands of David Mock assigned and allotted to her. The interested parties agreed that it would be to their best interests to sell the home place for the satisfaction of the debts of David Mock and to assign dower in one of the other lands.

By a decree of October 20, 1910, in the above-mentioned consolidated chancery causes, commissioners were appointed to allot and assign her dower. The papers in that cause have been lost or destroyed, only the decrees being preserved. A further decree of April 17, 1911, affirmed a report of the commissioners filed on February 3, 1911, laying off dower to the widow of David Mock as "consisting of one hundred and thirty-seven (137) acres of the Virginia Broyles Land," that is, the Buhrman land. It will be noted that the deed to David Mock for the Buhrman land described it as containing 147 acres.

In 1925, Delmar Mock and Lucille Mock Copenhaver, brother and sister, by a deed duly made and executed, undertook to partition between themselves the remaining lands of their late father, the Price and Buhrman tracts. On the same date, they entered into a separate contract relative thereto, both papers being filed as exhibits herein. There were present when the contract and deed were drawn, in the office of an attorney, Mrs. Sutherland, Delmar Mock, Lucille Mock Copenhaver, and her husband. The two instruments were acknowledged on September 16, 1925, and duly recorded in the Clerk's Office of Washington County, Virginia.

The deed recited that Delmar Mock and his sister "are in possession of what is known as the Price place and are to obtain possession of the Buhrman place at the death of their mother;" that "John F. Copenhaver and Lucille M. Copenhaver have this day rented from Delmar Mock his interest in the Price place at the price of Two Hundred Dollars ($200.00) per year, and certain other stipulations mentioned

in a contract of even date herewith, said lease to continue to the death of Mrs. Elizabeth Mock, now Sutherland;" and that the parties "have this day divided the real estate which is now in their possession and also that which is to come to them at the death of their mother." Delmar Mock conveyed to his sister "all his right, title and interest in and to what was known as the Price place," describing it as being bounded on the south by a river, and by a "portion of the Buhrman lands," west by the Buhrman land and by certain adjoining lands of other persons on the remaining sides, and "containing 156 acres, be the same ever so much more or less." Lucille Copenhaver and her husband conveyed to Delmar Mock "what is known as the Buhrman place," describing it as being bounded by a river and "on the north by a portion of the Price place," and east by the Price land, and "containing 131 acres, be the same ever so much more or less." Then followed this recitation: "It being the intention to convey to Delmar Mock all of the Buhrman land and to Lucille Copenhaver all of the Price land which formerly belonged to their father, David Mock." It was further recited that "Delmar Mock is not to have possession of said land (the Buhrman tract) unless he makes arrangements with his mother until her death, but is to have the rental from Lucille Copenhaver and her husband, John F. Copenhaver, of $200.00 per year during the lifetime of their said mother."

The contract of the same date recited that in consideration of $200.00 a year to be paid to Delmar by Mr. and Mrs. Copenhaver for the period of Mrs. Sutherland's lifetime, Delmar rented to Mr. and Mrs. Copenhaver "what was formerly his one-half undivided interest" in that tract of land which had been that day sold and conveyed to Lucille Copenhaver, and that Mr. and Mrs. Copenhaver had conveyed to him "what is known as the Buhrman place, * * * and of which Buhrman place the said Delmar Mock is not to get possession, so far as Lucille Copenhaver and John F. Copenhaver are concerned, until the death of Elizabeth Mock, now Elizabeth Sutherland."

By deed dated December 15, 1932, duly executed, acknowledged, and recorded, Delmar Mock quit-claimed and conveyed unto his sister all of his right, title, and interest in the land conveyed to her by the deed dated January 1, 1925, "free from any lien which may have been created against said real estate by reason of said rental agreement hereinbefore referred to."

On the same date, December 15, 1932, Mrs. Elizabeth Sutherland, by her deed duly executed, acknowledged, and recorded, quit-claimed and released, as the widow of David Mock, all of her right, title, and interest in the same land "known as the Price place." These two quit-claim deeds were executed to clear the title of Mrs. Copenhaver, so that she could sell the Price land or borrow money thereon.

In June, 1943, Lucille Copenhaver requested her brother to execute and deliver to her a deed correcting the deed of January 1, 1925, describing more accurately the property intended to be conveyed to her in the deed of January, 1925, and specifically including therein, as a part of the Price farm, the land here in dispute,—that is, approximately ten acres of what was a portion of the original Buhrman tract of 147 acres, adjoining the original Price tract on its southerly and westerly boundaries.

Delmar Mock refused to execute this deed, and subsequently on July 24, 1943, instituted this action in ejectment against his sister and her husband. His original declaration sought to eject the defendants from a tract of land described as containing 147 acres. In an amended declaration he described the land as containing 10.21 acres, which will be hereinafter referred to as 10 acres. These 10 acres comprise exactly the same land which Mrs. Copenhaver sought to have her brother include in the requested correction deed.

In his bill of particulars Delmar Mock claimed title to the disputed land by virtue of the partition deed of 1925. He further asserted that his right of action to recover same did not accrue until the death of his mother by reason of her dower therein.

For grounds of defense, the defendants claimed that at the time the partition deed was executed between the parties partitioning the land, it was well known by each of them that the parcel in controversy had been laid off, treated and considered as a part of the Price tract, and that the description in the partition deed conveying the Price tract was intended to include the disputed parcel; and that, in any event, the defendants were the actual owners of the disputed parcel, in possession thereof, and had held adverse possession for more than ten years prior to the institution of this suit. They denied that the ten acres were ever included in the widow's dower land.

Upon defendants' plea of not guilty, the case proceeded to trial, and a jury found for the defendants. Their verdict was approved by the trial court and judgment entered accordingly.

The plaintiff contends that the judgment is contrary to the law and the evidence, and without evidence to support it; that the trial court erred in the admission and rejection of evidence, and in granting and refusing instructions. He does not, however, in his brief, point out the specific evidence alleged to have been erroneously admitted or rejected.

The deed of January 1, 1925, and the rental contract of the same date obviously cover the same land. If the disputed ten acres were included, or intended by the parties to be included, in the conveyance to Mrs. Copenhaver, that conclusion terminates this controversy in her favor. On this point, the evidence is conflicting. Mrs. Copenhaver testified that it was the intention of the parties of the deed to convey to her the land in dispute as a part of the Price farm. Her brother testified to the contrary. He denied knowledge of her claim of ownership and any disclaimer of his title. The location and description of the land conveyed by their deed are not as clear and specific as they might be. Therefore, it was not erroneous to admit extrinsic evidence to show the intention of the parties as to the true location and description of the land intended to be conveyed. *Merritt* v. *Bunting*, 107 Va. 174, 57 S. E. 567,

12 Ann. Cas. 954; *Smith* v. *Bailey*, 141 Va. 757, 127 S. E. 89; 16 Am. Jur., Deeds, section 430.

While the extrinsic evidence is sufficient to support a finding in favor of Mrs. Copenhaver on this issue, it is not necessary to base our decision upon its determination. A correct decision may be reached by accepting Delmar Mock's theory that the whole of the original Buhrman tract, subject to the widow's dower, was conveyed to him by his sister in the deed of 1925, and determining the issue of adverse possession as to the ten acres.

If Delmar Mock conveyed only the original Price tract to his sister, he rented to her only the original Price tract. Under that construction, he became the owner of the original Buhrman tract, subject only to such dower rights as his mother had therein. If the ten acres were not included in her dower (and it will be hereinafter shown they were not), he took those ten acres free from any dower right. Therefore, as to the ten acres, there could not have been either the relationship of landlord and tenant or co-tenant between Delmar and his sister. Certainly there can be no real question of co-tenancy between them after the quit-claim deed of 1932 from Delmar, executed ten years prior to the institution of this proceeding.

Delmar Mock, his mother, and sister lived in close family relationship until about 1922. After the death of David Mock in 1907, the two children made their home with their mother and her husband, R. H. Sutherland, on the old Mock farm homeplace purchased by Sutherland.

S. L. Mock, a brother of David Mock, qualified as guardian of the two children, and he rented the Price and Buhrman places to R. H. Sutherland. The latter had charge of his wife's dower interest, and was in control of the two farms until the infants reached their majority.

In 1923, after her marriage with Copenhaver, Lucille and her husband moved to the Price place. Delmar made his home there with them until the year 1925, when Mrs. Copenhaver moved to another farm, and he went to live with his mother and stepfather. The Price farm was farmed

jointly with Delmar until he left there in 1925, and from that year and until the institution of this suit, the ten-acre tract in controversy has been in the sole and exclusive possession of Lucille Copenhaver and her husband. This was admitted by R. H. Sutherland, by Delmar Mock, and verified by the evidence of disinterested witnesses, with knowledge of the peculiar facts.

The decree of the Circuit Court of Washington county of April 17, 1911, assigning Mrs. Sutherland dower in only "137 acres of the Virginia Broyles land," seems to have been accepted by all of the interested parties. The remaining ten acres of that farm were thereafter treated as a part of the Price land. Mrs. Copenhaver said that her mother had, "time and time again," told her and Delmar, "that the ten acres were laid off from the Buhrman place to the Price place to make the two places of equal value."

R. H. Sutherland testified that the separation was made originally for the purpose of equalizing the sale value of the three farms of which David Mock died seized and possessed. The one hundred and thirty-seven acres of the Buhrman land then amounted to one-third of the value of the real estate of the late David Mock,—the equivalent of the widow's dower right.

Two witnesses, J. S. Wagner and S. H. Kelly, testified that Delmar Mock had told them, on several occasions, that Mrs. Copenhaver had "received" the ten acres which had been cut off of the Buhrman place.

In 1927, shortly after the partition deed, a fence was built around the ten acres along a line marked out by a surveyor, including them as a part of the Price farm. R. H. Sutherland was present when the survey was made, and according to several witnesses, although he made a feeble denial, helped construct the fence by furnishing one-half of the wire and paying for one-half of the labor.

One witness testified that Sutherland told him in 1927, that the ten-acre tract belonged to Lucille Copenhaver.

J. S. Wagner, who lived on the Price place from 1908 to 1921, testified that the ten-acre tract was never treated as a

part of the dower of Mrs. Sutherland, and that from the time her dower was laid off in a portion of the Buhrman place, the ten acres were farmed with and considered a part of the Price place.

S. H. Kelly stated positively that the ten acres were a part of the Price place in 1911, when he moved there, and that they had always thereafter been considered a part of that place.

John F. Copenhaver stated that he had heard Mrs. Sutherland tell her daughter, "Don't forget there are ten acres that came off the Buhrman place that go with the Price land," and that subsequently Delmar showed him the lines of the two farms and where the ten acres were to come off of the Buhrman place.

The evidence discloses that Mrs. Sutherland never had possession of the ten acres and that she made no claim thereto. It shows that the ten acres had been fenced in and farmed by the Copenhavers as a part of the Price land from 1927, a period of more than fifteen years before the institution of this suit; that Delmar never collected one penny of rent nor made any claim for rent; and that Delmar knew that it was fenced in and used by his sister, and had full knowledge of her claim of ownership.

Although he moved to North Carolina shortly after 1925, married, and settled there, and worked for a certain period in the western part of the United States, he frequently visited his home county and actually came there annually to collect the rent reserved in his contract of 1925. On several visits, he saw the land and the use being made of it, talked to the interested parties, and assented to his sister's claim of ownership.

Upon a consideration of all the evidence, we think it is clearly and satisfactorily proved that Mrs. Copenhaver, under a claim of right and a claim of ownership, held the actual, exclusive, hostile, open, and notorious possession of the ten acres in question for more than ten years. In addition to farming the land and exercising exclusive possession thereof, she asserted title thereto by executing, at

one time, a deed of trust thereon. Her domination and control of the land was complete. Virginia Code, 1942, (Michie) section 5805. See *Marion Inv. Co.* v. *Virginia Lincoln Furniture Corp.*, 171 Va. 170, 198 S. E. 508, 118 A. L. R. 939.

We find no error in the granting and refusing of instructions. The plaintiff asked for nineteen instructions, four of which were given. These four were all that he was entitled to under the facts of the case. Some of the instructions refused were merely restatements of others rejected. Some were based on a partial view of the evidence, or were confusing and contrary to correct instructions given on behalf of the defendants.

We agree with the learned trial court that the evidence fully supports the verdict of the jury, and that their verdict was the only one that could have been properly returned. The judgment is, therefore, affirmed.

*Affirmed.*