## CIRCUIT COURT OF NORTHUMBERLAND COUNTY

Bay House Associates, L.P.

v.

William P. Jenkins, Sr., et al.

April 2, 2002

Case No. (Chancery) 61-98

BY JUDGE HARRY T. TALIAFERRO, III

In this suit, Bay House Associates, L.P. (herein referred to as "Bay House") seeks a mandatory injunction requiring each defendant to remove the dock that reaches from that defendant's property onto the property of Bay House. Bay House alleges ownership of a tract of land containing approximately 78.5 acres, the same being the land lying beneath what is known as Gaskins Pond. The plaintiff's claim of title is derived from a deed dated February 3, 1909, from Claude Swanson, Governor of Virginia, to J. C. Jett and J. A. Palmer, Jr., recorded in the Clerk's Office of the Circuit Court of Northumberland County, Virginia, in Deed Book V, at Page 37. Each of the defendants owns property adjoining Gaskins Pond as shown by surveys in their own chains of title. The defendants Jenkins' survey shows one side of their property bounded by the "low waters of Gaskins Pond"; the defendants Rodgers own property shown by survey as bordering the "apparent edge of water at time of survey"; the defendants Hardy, Russ, and Coughlin all hold title by surveys showing the boundary of their property to be "edge of pond."

The defendants deny that Bay House is seised and possessed of the land lying beneath Gaskins Pond on three separate grounds: (1) that the Governor of Virginia lacked authority to make a conveyance of the land by the 1909

deed; (2) that the description of the plaintiff's property is so vague and indefinite that plaintiff's deed is essentially worthless since it cannot establish what land it owns; and (3) the defendants have riparian rights which permit them to build piers into Gaskins Pond and to use its waters.

*Authority of Governor Swanson*

It was the opinion of the plaintiff's expert witness, Dr. Theberge, based upon his extensive research, exhibited in part by ancient documents of the Archives of Virginia that Gaskins Pond was in 1909 and had been at all times before, a completely landlocked, non-tidal and non-navigable body of water. The defendants do not dispute this. It was further the opinion of Professor Theberge that Gaskins Pond was unappropriated land, which is to say it was not part of the "commons" which the Governor by statute in effect in 1909 would have been barred from conveying. Based on his research of such records, he opined that, since the colonization of Virginia, Gaskins Pond had been conveyed to no one and was, therefore, vacant and unappropriated property. It was not part of the bed of any bay, river, creek, or other body of water which would have constituted part of the commons which is the land essentially set aside for the use of the public by the Code of Virginia.

The Governor's 1909 deed contains a certification that the grant in the deed had been registered in the Register's Land Office in Richmond (such records are now kept in the Virginia State Library) in Book 122, Page 50.

The Virginia Supreme Court has held that a document incorporated by reference into a deed "is not to be regarded as extrinsic evidence, but part of the instrument itself." *Richardson v. Hoskins Lumber Co.*, 111 Va. 755, 69 S.E. 935 (1911).

The referenced documents recorded in Richmond contain the same metes and bounds survey description set forth in the 1909 deed. The documents also contain a certificate of the surveyor, H. Gordon Blundon, that he did "survey and lay off the above land (a pond) for J. Jett and J. A. Palmer, Jr." The courses and distances given by Mr. Blundon in the certificate describe the line as "binding the land which borders the same" (i.e. pond). The metes and bounds description makes reference to the line coming to a point at "the head of a prong, then around the northern side of the pond and binding the land which borders the same. . . ." The certificate further states that "the boundaries of the pond bind the lands of the following persons: Charles Gaskins, A. Noel, A. Garner, H. Taylor, R. Taylor, I. Taylor, J. Sydnor, B. Brown, J. Brown, Richardson, B. Hudnall, B. Johnson, G. Haynie, Thomas Scott (deceased), A. Scott, and Charles Gaskins. The certificate also contains a sworn statement of Mr. Blundon as well as the two Grantees that, to their belief, the land embraced within the survey was "vacant and unappropriated."

The defendants argue the Governor had no authority to convey this property in question because the 1873 amendment to the original law of 1780, provides that "all the beds of the bays, rivers, and creeks and the shores of the sea within the jurisdiction of this Commonwealth, and not conveyed by special grant or compact according to law, shall continue and remain the property of the Commonwealth of Virginia and may be used as a common by all the people of the state. . . ." The defendants cite *James River and Kanawha Power Co. v. Old Dominion Iron & Steel Corp.*, 138 Va. 461, 122 S.E. 344 (1924), which held that a grant from the state of a portion of the bed of the James River was a part of the public domain of the state and this could not be deeded to a private owner. The James River is part of the commons of the State. The bed of such river is expressly prohibited from being conveyed by the State under the statute in question. This ruling is distinguishable from the present case because Gaskins Pond does not fit into the definition of any of the water courses described in the statute.

Accordingly, the Court holds that Governor Swanson had proper authority to execute the Deed in 1909 to the plaintiff's predecessors in title.

### Vagueness of Description

In the case of *Blair v. Rorer*, 135 Va. 1, 116 S.E. 767 (1923), it was stated "Courts are always loath to declare a deed void for uncertainty of description and no court is at liberty to pronounce an instrument uncertain until it has brought to aid in its interpretation all the light afforded by collateral facts and circumstances that are provable by parol." The Supreme Court further stated in *Midkiff v. Glass*, 139 Va. 218, 123 S.E.2d 329 (1924), that "Great liberality is shown in the matter of description. In the description, that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rule of construction, to ascertain what property the deed is intended to convey. The purpose of a description in a Deed is not to identify the land, but to furnish a means of identification."

The plaintiff's witness, James R. Gray, who was qualified as an expert as a certified land surveyor examined the Northumberland County land records as they pertained to Gaskins Pond, inspected the pond on several occasions, and examined the land office records in the Virginia State Library, which included the Governor's deed, the Blundon survey, and the written Blundon description. He examined the land books of Northumberland County which for every year subsequent to 1911 (the 1981 land book could not be located) described the property in question as a "pond."

Mr. Gray drew a plat following the lines on the Blundon survey which plotted 158 points. This is a very great number of courses and distances to set forth on any survey. The Blundon survey lacked closure by approximately 77 feet which Mr. Gray concluded was a remarkably small inaccuracy, considering the crude surveying instruments in use in the early twentieth century.

Mr. Gray compared his drawing to other exhibits on the same scale, namely the Tomlin & Keyser plat made in 2001, the aerial photograph, and the Reedville Quadrangle of the United States Coastal and Geodetic Survey map. Mr. Gray's professional opinion was that the Blundon plat and description matched the modern survey of Tomlin & Keyser, the aerial photograph, and the Quadrangle. The differences which appeared between the 1908 and 2001 plats could be accounted for, according to Mr. Gray, by siltation and erosion over the course of the last ninety some years. Mr. Theberge's opinion, based on his study of the written record was that the pond was at its largest in 1909 and that the shores of its waters have receded since then.

The plaintiff's witness, Phillip L. Keyser, a certified land surveyor qualified as an expert, made a survey dated January 18, 2001, showing where the present shore of Gaskins Pond is located. Owing to great advances in survey technology, a much more precise outline of the pond could be made than could have been done in 1908. Mr. Keyser compared his plat to the same scale Blundon survey as drawn by Mr. Gray. It was the opinion of Mr. Keyser that all these documents showed the same thing, namely the boundaries of Gaskins Pond. He found only minor variations between his survey and the original Blundon plat as laid off by Mr. Gray.

Defense counsel's cross-examination of the surveyors inquired whether they were familiar with any bodies of water the boundaries of which were all straight lines and angled corners as shown on the Blundon survey. They indicated they knew of no such bodies of water. Counsel also questioned whether they could locate the post which was the original beginning point of the Blundon survey. Both surveyors said they could not locate this ninety-three year old marker. The defendants argue that the present shores of Gaskins Pond as drawn by Mr. Keyser do not exactly match the straight lines and angled corners of the Blundon survey. Mr. LoPorto argued that all of this taken together made the description so inaccurate that the plaintiff's deed to what the Governor had originally conveyed in 1909 should be declared invalid for indefiniteness.

Mr. LoPorto relies on the case of *Merritt v. Bunting*, 107 Va. 174, 57 S.E. 567 (1907), as authority for setting aside a deed for vagueness of description. The *Merritt* case involved a deed from Governor Frederick W. M. Holliday

containing 26.09 acres. The Deed was never recorded in Accomack County. The deed described the land as located on Chincoteague Island beginning at point (a) with course and distance references to point (j) and thence to the point of beginning. No other reference to the location of any of the points were given. The county surveyor testifying for the defendant said he could not locate the land because there was nothing to show where the land was located except that it was on Chincoteague Island and embraced within certain courses and distances. This case is distinguishable from our case in that there is much evidence to establish that the conveyance in question is Gaskins Pond. It is the finding of this Court that the Blundon survey, based on all the evidence, including the listing of the names of fourteen persons whose properties bind the property conveyed, provides sufficient evidence for a surveyor to determine the modern location of the same. The shore of the pond obviously provides a natural landmark for locating its boundary. If artificial boundaries, such as the post which was named as the beginning point on the Blundon survey, cannot be located, a surveyor may use adjacent boundaries or lines of adjoining tracts, calls for courses and distances, and designations of quantity to establish the survey lines. See *Providence Properties, Inc. v. United Virginia Bank/Seaboard National, Trustee*, 219 Va. 735, 251 S.E. 2d 474 (1979), and *Spainhour v. B. Aubrey Huffman & Assocs.*, 237 Va. 340, 377 S.E. 2d 615 (1989). There is ample evidence in the record that the surveyors did rely upon such other factors in opining that the current boundaries of the pond as shown on the Keyser 2001 survey are the same as those granted by the deed in 1908.

This Court will note that the pond in 1908 most obviously did not have a shore line consisting of straight lines and angled corners. Mr. Blundon owing to the limitations of technology of his time drew 158 courses which were not the exact boundaries of the pond but were close enough to identify the property being conveyed as the land forming the bed of Gaskins Pond.

The expert opinion of the surveyors was that the 1908 Blundon survey, the 2001 Keyser survey, the aerial photograph, and the quadrangle, when put on the same scale, matched.

The opinions of the two surveyors were not challenged by any other testimony or expert opinion since the defendants presented no evidence at trial.

The Court holds that the plaintiff's deed to Gaskins Pond does not fail because of indefiniteness of the description.

*Riparian Rights*

Although the date is not certain, it is undisputed that, at some time subsequent to 1909, the isthmus of land which separated Gaskins Pond from

the Chesapeake Bay was breached. It is not clear from the evidence whether this breach opened up a large enough channel for the tide to rise and fall in Gaskins Pond in sequence with the tides in the Chesapeake Bay or whether it only overflows at high water occasioned by unusual high tides or storms. In any event, there is no question that Gaskins Pond is now in some manner connected to the Bay.

The defendants assert that, because of the connection to the Bay, they possess riparian rights in Gaskins Pond. This would include the right to build a pier or wharf out to navigable water, subject to any regulations of the State. *Taylor v. Commonwealth*, 102 Va. 759, 47 S.E. 875 (1904).

It is stipulated in this case that, at the time of the conveyance by Governor Swanson, Gaskins Pond was non-navigable. The State owned the land in 1909, not because it was in "the commons" or was navigable water, but because it was unappropriated vacant land. The Governor conveyed fee simple ownership in Gaskins Pond when it was conveyed in 1909. The plaintiff's assertion of riparian rights necessarily implies that these fee simple ownership rights were changed or otherwise diminished when Gaskins Pond became open to the waters of the Bay, which is undeniable a navigable waterway. The defendants argue that the State and the defendants gained rights to the use of the waters and bottom of Gaskins Pond when it became open to the Bay.

This cannot be true, however, where there has been "a lawful grant or patent of the underlying soil." See *Kraft v. Burr*, 252 Va. 273, 476 S.E. 2d 715 (1996). The Court finds that the opening of the waters of Gaskins Pond to the Chesapeake Bay did not in anyway diminish the fee simple ownership of its bed or waters by the plaintiff. The Court finds the case of *Kaiser Aetna v. United States*, 444 U.S. 164, 62 L. Ed. 2d 332, 100 S. Ct. 383 (1979), has a direct bearing in this case. In *Kaiser*, the United States Supreme Court found that, if the waters of a privately owned landlocked pond were later opened to navigable waters, the government could not require public access to the same without invoking eminent domain and paying just compensation. In other words, property rights which are privately owned cannot involuntarily be taken from the owner unless the government condemns the property and pays just compensation for it.

The Court finds that the defendants have no riparian rights in Gaskins Pond.

*Conclusion*

The Court holds that, as established by the original 1909 deed from Governor Swanson of Virginia, Bay House, as successor in title to the same, has a fee simple ownership in Gaskins Pond. As such, it is within its right to

bar the defendants from trespassing upon its property by the construction of piers built without the owner's permission. Accordingly, the Court will decree a mandatory injunction requiring the defendants to disassemble and remove their piers within sixty days of the date of this Court's order and will enjoin the defendants from any future construction of the same unless under a grant of right from the plaintiff or the then present owner of Gaskins Pond.