## Richmond

## JETER V. VINTON-ROANOKE WATER COMPANY.

### January 16, 1913.

1. EMINENT DOMAIN—*Easements—Pipe Line.*—Under the statutes of this State, a public service corporation may condemn an easement for the purpose of laying a pipe line, with rights of ingress and egress to lay, install, repair and maintain the same. Such easement is plainly within the intendment of section 1105-f of the Code of 1904.

2. EMINENT DOMAIN—*Taking Water Only.*—Interests in water, as well as land, are subject to the laws of eminent domain, and under the statutes of this State such interests may be condemned for a public use apart from the land of the owner.

3. EMINENT DOMAIN—*Public Service Corporation—Legislative Declaration.*—The mere declaration in charters of private corporations, or in general statutes, that such corporation shall be deemed a public service corporation does not make it such a corporation upon which the power has been, or may be, conferred of taking private property by condemnation for its uses and purposes. The legislature cannot conclude the constitutionality of its own enactments.

4. WATER COMPANIES—*Right of Eminent Domain—Public Policy.*—The legislatures of this and other States have adopted the policy of conferring upon water companies supplying water, light or power to persons, partnerships or corporations in rural districts, as well as in cities and towns, the power of eminent domain, where the public use or benefit is apparent, reserving to the State the right and duty, through appropriate agencies, of safeguarding the interests of the public in the use of private property so taken.

5. EMINENT DOMAIN—*Public Use—Definition.*—To constitute a public use the public must have a legal right to the use or service for which the property is taken independent of the will of the condemning party. The reason of the case and the settled practice of free governments are the guides in determining what is, and what is not, a public use, and that only can be considered a public use where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare, which, on account of their peculiar character, and the difficulty or impossibility

49

of making provision for them otherwise, it is alike proper, useful and needful for the government to provide. For other definitions of "public use" see opinion of *Cardwell, J.*

6. WATER COMPANIES—*Charter Powers—Eminent Domain—Case at Bar—"Neighborhood"—City Near By.*—A water company chartered to furnish water and light to a town "and to such persons, partnerships and corporations residing or doing business therein and in the neighborhood thereof as may desire to use either the water or light, or both," and which is given the power of eminent domain in order to accomplish that purpose, is thereby authorized to extend its system to a city two miles distant from the town, and containing a population of forty thousand inhabitants, and in order to supply customers in the city, may condemn additional water not otherwise needed for its purposes. The use is public, the control and regulation of the service is under the supervision of the State Corporation Commission, and in view of the surrounding circumstances and conditions, the word "neighborhood" used in the company's charter embraces the city aforesaid.

Error to a judgment of the Circuit Court of Bedford county in a condemnation proceeding. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*M. H. Attizer, W. J. Henson* and *P. H. Dillard,* for the plaintiff in error.

*Woods & McNulty* and *Hall & Woods,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The Vinton-Roanoke Light and Water Company was incorporated by an act of the General Assembly of Virginia, approved March 4, 1890 (Acts 1889-90, p. 860), and was, by the act of its incorporation, declared to be an organization for a work of internal improvement, and was authorized to condemn the rights of way and lands necessary to enable it to carry out its purposes.

Under its charter the company was authorized "to supply water and furnish light, either electricity or gas, to Vinton, Roanoke county, Virginia, and to such persons, partnerships and corporations residing or doing business therein, and in the neighborhood thereof, as may desire to use either the water or light, or both." The company was further authorized to acquire such lands, interest in lands, rights of way, easements, water rights, franchises, etc., as were necessary to erect and maintain all proper works for introducing water and furnishing light to Vinton and its neighborhood.

The company became involved and its property and franchises were sold under a decree of court foreclosing a deed of trust or mortgage thereon, and by deed from a special commissioner of the court the property and franchises were conveyed to the Vinton-Roanoke Water Company, the purchaser thereof, and by that purchase and conveyance the last-named company was, according to the statute in such cases made and provided, duly constituted a corporation with all the rights, franchises and privileges conferred upon its predecessor in title, the Vinton-Roanoke Light and Water Company, and thereby became obligated to perform all of the public services and duties of that company.

By an ordinance adopted August 24, 1897, the council of the town of Vinton granted the Vinton-Roanoke Water Company a franchise to install, maintain and operate its water works within the corporate limits of the town, for the purpose of supplying water to the town and its inhabitants. Under this franchise the company was authorized to use the streets, avenues, alleys and public grounds of the town in laying necessary pipes for conveying water for the use of the town and the inhabitants thereof, the ordinance prescribing a maximum rate that the company might charge for furnishing water to private consumers.

On November 9, 1897, the common council of the city of

Roanoke passed an ordinance granting to the said company a franchise allowing it to supply water to the city and the inhabitants thereof, and authorizing it to use the streets, avenues, alleys and public grounds of the city in laying pipes and other apparatus for conveying the water. This ordinance also provided that the company should furnish, free of charge, water to the city for fire protection and for supplying its public buildings, certain drinking troughs for horses and public drinking fountains.

Pursuant to the above-mentioned ordinances, the Vinton-Roanoke Water Company has laid its water mains in the town of Vinton and in the city of Roanoke, and in the town of Vinton it furnishes the only supply of water for fire protection and is supplying about two hundred and ten private families with water. In the city of Roanoke the company is furnishing water for municipal public buildings and for fire protection, and supplies about five hundred and fifty private families with water. It also furnishes water in the city of Roanoke to the Norfolk and Western Railway Company at its round-houses and shops, to the Virginia Brewing Company; to laundries, livery stables, and to various manufacturing and industrial plants. It also appears that between the company's reservoir, which is located east of Vinton in Bedford county, and the town of Vinton, water is supplied for domestic purposes to one customer, through whose property the company's pipe line runs; and between Vinton and the city of Roanoke it furnishes water to about twenty-five families located along its pipe line, who live neither within the corporate limits of Vinton nor the corporate limits of the city of Roanoke, the town of Vinton being situated about two miles from the city of Roanoke.

In order to obtain a supply of water sufficient for the company's requirements and to enable it to extend its pipes in the city of Roanoke and in the town of Vinton, to supply

additional consumers, the company sought to acquire the
·use of the waters of a certain stream known as Beaver
Dam creek, and thereupon attempted to acquire the ri-
parian rights of certain persons, including J. A. Jeter, in
the waters of said creek, which are appurtenant to a ten-
acre tract of land, three-fourths interest in the same being
claimed by Jeter.  The company also attempted to acquire
a right of way for a pipe line through the ten-acre tract,
which pipe line had already been laid under a defective
conveyance of a right of way, Jeter having acquired an
interest in the land by purchase after the company's pipe
line had been laid through it.  Being unable to agree upon
the price and terms of purchase of the desired right of way
with some of the owners of the land, and by reason of ·
some of the owners thereof being infants, it became neces-
sary to institute this condemnation proceeding, the inter-
ests thereby sought to be conveyed consisting of the right
to lay, construct, repair and perpetually maintain a pipe
line through the said ten-acre tract of land, the course of
the pipe line being set forth in the petition and other pro-
ceedings in the cause, with the right of ingress and egress
for the purpose of laying, installing, repairing and main-
taining the same; and also the right to impound on the
lands of the company the waters of Beaver Dam creek, at
a point above the ten-acre tract of land, and for that pur-
pose it is proposed to acquire by condemnation the riparian
rights appurtenant to this ten-acre tract of land in the
usual flow of the waters of the creek.

At the January term, 1910, of the circuit court, upon
the proof offered as to the necessity existing for the acqui-
sition by the Vinton-Roanoke Water Company of the
rights it sought to secure, that infants were interested,
that the company could not acquire said rights by pur-
chase, and other facts as to the uses being made by the
company of its charter rights and powers, the court, over

the objection of said J. A. Jeter, appointed commissioners to make the inquiry and report required in such cases. The commissioners returned their report, setting forth that the rights sought to be acquired by condemnation were necessary to the purposes of the company, and fixed the damages to the owners of the ten-acre tract of land, for the rights and interests therein sought to be acquired, at $25, to which report Jeter filed exceptions, and upon a hearing on the report and the exceptions thereto the circuit court overruled the exceptions and confirmed the report, to which judgment Jeter obtained this writ of error.

Plaintiff in error contested below and is contesting here the right of defendant in error to acquire by condemnation the interests sought by it to be acquired in the said ten acres of land, on the theory that the company is not authorized by law to condemn lands or interests in land. In other words, the contention of plaintiff in error is (1) that defendant in error's charter is unconstitutional in that it authorizes the condemnation of private property for private uses; (2) that neither the charter of the company nor the general law authorizes it to condemn merely water, or riparian rights therein, which is attempted to be done; (3) that this being a proceeding to condemn a mere easement for the purpose of laying a pipe line with undefined rights of ingress and egress, the rights sought could only be acquired by condemnation of plaintiff in error's interest in the land, which is a fee; and (4) that the defendant in error already has abundant water to comply with all of its charter duties, and the water is not used for that purpose, etc.

With respect to the question whether or not a public service corporation may, under the authority of its charter or the general laws of the State, acquire for its purposes by condemnation a lesser estate in land than the fee, *e. g.,* a mere easement for the purpose of laying a pipe

line with rights of ingress and egress to lay, install, repair
and maintain the same, we deem it only necessary to say
that this question has been put at rest by the decision of
this court in *Swann* v. *Washington, &c. R. Co.,* 108 Va.
282, 61 S. E. 750, and authorities there cited, to the effect
that under the Code of 1904, section 1105-f, authorizing
the condemnation of "lands or any interest or estate there-
in, or materials, or other property," an easement of a right
of way may be condemned; such easement being plainly
within the intendment of the law.

In *Clear Creek Water Co.* v. *Gladeville Improvement
Co.,* 107 Va. 278, 58 S. E. 586, it is also held that "Under
the Virginia statute authorizing public service corpora-
tions to condemn for their purposes 'sand, earth, gravel,
water or other material,' and prescribing the procedure for
the condemnation of any 'land or other property, or any
interest therein,' a water company desiring to divert a
running stream for its purposes has power to condemn,
as against a lower riparian owner, the water right apart
from the land of such owner, notwithstanding a further
provision of the statute that nothing therein shall be con-
strued as authorizing the condemnation of a 'less estate'
in the property than is owned by the party against whom
the proceeding is brought, the word 'estate' being used to
denote the quantity of interest of the owner in the par-
ticular subject sought to be condemned."

Interests in water, as well as in land, are subject to the
law of eminent domain. Such interests are indispensable
to water companies, and when waters of a stream are di-
verted, of course, the inferior riparian proprietor is en-
titled to compensation for the use of the water of which
he is deprived. 13 Am. & Eng. Ann. Cases 71.

The authorities recognize as a settled principle of law
that the State may authorize the taking, by virtue of the
power of eminent domain, of water for public uses—that

is, for use by the public—therefore, the controlling question in this case is whether the grant in defendant in error's charter of the right, not only to supply the town of Vinton and the inhabitants thereof with water, but also to persons, partnerships or corporations residing or doing business in the neighborhood thereof, is for private and not for public uses. No question is raised as to the validity of the charter in so far as it confers the right upon the company to acquire by condemnation property for use in supplying the town of Vinton and the inhabitants thereof with water, but the contention is that the right granted to supply water to persons, partnerships and corporations residing or doing business in the *neighborhood* thereof, is for private and not for public uses. As supporting this contention the cases of *Miller* v. *Town of Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552, and *Fallsburg Co.* v. *Alexander,* 101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep. 855, are greatly relied on.

Those cases, as well as the great majority of the decided cases in other jurisdictions, hold that authority for taking private property for a public use upon the payment of just compensation therefor, where the power is exercised by the State or by legislative act conferring the power expressly or by necessary implication, is abundant and conclusive, but that private property cannot be taken by condemnation for private use, either with or without compensation, is a proposition that has never been seriously questioned; and that where the power to take property for a public use, conferred by legislative act, is so combined with the right to use the property for private purposes that the public use cannot be separated from the private use and be so controlled as to safeguard the interests of the public therein, the authority to take the property is unconstitutional and void.

The power of eminent domain is an incident of sovereignty. It is vested in the legislature and can only be

set in motion by virtue of legislative enactment, by which the times, manner and occasion of its exercise are controlled, except as restrained by the Constitution. The legislature is clothed with exclusive authority to determine when the duty exists for exercising the power, and it may exercise it directly or through such agencies as it pleases." *Painter* v. *St. Clair,* 98 Va. 85, 34 S. E. 989, 5 Va. & W. Va. Dig. 9879.

The mere declaration, however, often found in charters of private corporations, or in general statutes, that such corporation shall be deemed a public service corporation, etc., does not make it such a corporation upon which the power has been or may be conferred to take private property by condemnation for its uses and purposes; for, as was said *In re Rhode Island Suburban Co.,* 22 R. I. 455, 48 Atl. 590, if a legislature should say that a certain taking was for a public use, that would not make it so, for such a rule would make the legislature to conclude the question of constitutionality by its own declaration.

"Whether the taking is for a public use is always a question of law. Deference will be paid to legislative judgment as expressed in enactments providing for the appropriation, but it will not be conclusive." Cooley's Const. Lim. 536; 6 Words and Phrases 5832.

The question after all in this and like cases is whether the use for which the property proposed to be taken is a public or a private use. At p. 532, Cooley's Const. Lim., the learned author says: "We find ourselves at sea when we undertake to define, in the light of judicial decisions, what constitutes a public use."

In *Olmstead* v. *Camp,* 33 Conn. 551, 89 Am. Dec. 221, the opinion of the court, replying to a question as to the limit of the legislative power in cases involving the right to take private property for a public use, and as to the exact line between public and private uses, says: "From

the nature of the case there can be no precise line. The power requires a degree of elasticity to be capable of meeting new conditions and improvements, and the ever-increasing necessities of society. The sole dependence must be on the presumed wisdom of sovereign authority, supervised, and, in cases of gross error or extreme wrong, controlled by the dispassionate judgment of the courts.

"By 'public use,' as such phrase is used in the law of eminent domain, is meant for the use of many, or where the public is interested. *Seely* v. *Sebastian,* 4 Or. 25. But to constitute a public use: First, the general public must have a definite and fixed use of the property condemned; a use independent of the private person or private corporation in whom the title of the property when condemned will be vested; a public use, which cannot be defeated by such private owner, but which public use continues to be guarded and controlled by the general public through laws passed by the legislature. Second. This public use must be clearly a needful one for the public, one which cannot be given up without obvious general loss and inconvenience. Third. It must be impossible, or very difficult at least, to secure the same public use and purpose otherwise than by authorizing the condemnation of private property. *Varner* v. *Martin,* 21 W. Va. 534. In *Gilmer* v. *Lime Point,* 18 Cal. 229, a public use is defined to be a use which concerns the whole community, as distinguished from a particular individual. The use which the public is to have in such property must be fixed and definite. It will not suffice if the general prosperity of the community is promoted by the taking of property from the owner and transferring its title and control to a corporation, to be used by such corporation as its private property, uncontrolled by law as to its use. In other words, the use is private so long as the land is to remain under the private ownership and control, and no right to its use or to direct its management

is conferred on the public." See also 6 Words & Phrases,
*supra,* p. 5827, citing *Fallsburg, &c. Co.* v. *Alexander,*
101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep.
855; also same authority at page 5828, *et seq.*

"A use to be public need not be for the use and benefit
of the whole public or State, or any large part of it. It
may be for the inhabitants of a very small or restricted
locality; but the use and benefit must be in common, not
to particular individuals or estates." *Miller* v. *Pulaski
City, supra.*

To determine what is a public use authorizing the exer-
cise of the power of eminent domain, cases and principles,
rather than definitions, must be consulted.

"It is well established by the weight of authority," said
the opinion in *Orny* v. *Goodwin,* 3 Ariz. 255, 26 Pac. 376,
"that in determining what is a public use, the peculiar
physical conditions and the necessities of the country are
to be considered, and in some cases to determine, whether
the taking is for a public or private use."

"Where a use is public a trust attaches to the subject
condemned for the benefit of the public, of the enjoyment
of which it cannot be deprived by the company without
reasonable excuse, and the State retains the power to regu-
late and control the franchise and to fix rates." *Zircle* v.
*Southern Ry. Co.,* 102 Va. 17, 45 S. E. 812, 102 Am. St.
Rep. 805.

The authorities also agree that if the property of a cor-
poration is devoted to furnishing the general public or
some definite portion of it with a public utility, and the
public has a definite and fixed use in the property which
cannot be gainsaid or denied, then the property is devoted
to a public use—that is, where the right of the public to
the use of the property is reserved, and the law prescribes
a method whereby the right of the public to use the prop-
erty can be enforced, then there is little or no doubt that
the nature of the use is public.

When the case of *Fallsburg, &c., Co.* v. *Alexander, supra,* was decided, the right to control public service corporations performing a public duty was not, by constitutional provision or legislative enactment, reserved to the State in express terms, but in the present Constitution (section 164) that right is expressly reserved; and by section 156-a of the Constitution the State Corporation Commission is clothed with authority, subject to the provisions of the Constitution and to such requirements, rules and regulations as might be prescribed by law, to exercise the power of visitation, supervision, regulation and control of all corporations.

Not only does defendant in error's charter, which we have under consideration, confer upon the corporation the right of condemnation for certain purposes, but all public service corporations have that right under the general law, and by section 1294-a, clause 1, Ch. 54-A, Code of 1904, "Concerning Public Service Corporations," water supply companies are made public service corporations, and all municipal corporations and public institutions owned or controlled by the State are expressly excluded.

Under section 1313-a, cl. 16, Code of 1904, the Corporation Commission has the power and authority to require all corporations to perform and discharge any public duty or requirement imposed by law; and by section 1294-b it is provided that any aggrieved person may apply to the Corporation Commission for relief, and the commission may compel any public service corporation to observe and perform a public duty imposed upon public service corporations.

The State Corporation Commission is the instrumentality through which the State exercises its governmental powers for the regulation and control of public service corporations, and for these purposes the commission is clothed with legislative, judicial and executive powers.

*Commonwealth* v. *Atlantic, &c., R. Co.,* 106 Va. 61, 55 S. E. 572, 7 L. R. A. (N. S.) 1086, 117 Am. St. Rep. 983.

Companies, supplying water, light or power to persons, partnerships or corporations in the rural districts, as well as in cities and towns, have come into existence and will continue to do so to meet industrial progress, new conditions and the ever-increasing needs of society, and the legislative department of our government, as well as that of all or nearly all of the other States of the Union, recognizing that not only is the health and comfort of the people promoted by the use of wholesome, pure water, but that a requisite supply of water was indispensable to meet industrial progress, new conditions, etc., has adopted the policy of conferring upon such corporations or, in fact, individuals, partnerships or firms, the power of eminent domain, where the public use or benefit is apparent, but reserves to the State the right and duty, to be exercised through its designated agent, the Corporation Commission, to safeguard the interests of the public in the use of private property so taken.

Says the opinion by Rice, J., in *Jordan* v. *Woodward,* 40 Me. 317, "Strictly speaking, private property can only be said to have been taken for public uses when it has been so appropriated that the public have certain and well-defined rights to that use secured, as the right to use the highway, the turnpike, the public ferry, the railroad and the like."

"The reason of the case and the settled practice of free governments must be our guides in determining what is or what is not to be regarded as a public use; and that only can be considered such where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare, which, on account of their peculiar character and the difficulty, perhaps impossibility, of mak-

ing provision for them otherwise, it is alike proper, useful and needful for the government to provide." Cooley's Const. Lim., *supra,* p. 532, and note to *Beekman* v. *Railroad Co.,* 22 Am. Dec. 688.

The opinion by Bigelow, C. J., in *Talbot* v. *Hudson,* 16 Gray 417, says: "In a broad and comprehensive view, such as has heretofore been taken of the construction of this clause of the declaration of rights (private property shall not be taken for public use without due compensation), everything which tends to enlarge the resources, increase the industrial energies, and promote the productive power of any considerable number of the inhabitants of a section of the State, or which leads to the growth of towns and the creation of new sources for the employment of private capital and labor, indirectly contributes to the general welfare and to the prosperity of the whole community."

In *Bloomfield, etc., Gas Co.* v. *Richardson,* 63 Barb. 437, it was held that the laying of gas pipes from a natural gas spring or well by a corporation, for the purpose of conducting gas to neighboring cities and towns for sale and to supply gas to public streets and parks and to private dwellings, etc., is a public use.

In the case in judgment the property of defendant in error is devoted entirely to a public use, in that it is used to furnish a water supply to the town of Vinton and the inhabitants thereof, to the city of Roanoke, and to certain individuals who reside along the line of its works. True, the provision in the company's charter authorizing it to furnish water to consumers in the neighborhood of Vinton is rather vague and indefinite in its meaning, but when it is considered that the property acquired by the company is devoted to public use, and that the right to regulate the service and the rates, and to prescribe regulations for the benefit of the people and in the neighborhood of the town of Vinton, exists to the same extent as it does to the people

served in that town, the argument that the authority to furnish water "in the neighborhood thereof is so vague and indefinite as to render the charter of the company unconstitutional and void," loses much, if not all, of its force. The power conferred upon the company to supply water to persons, partnerships and corporations residing or doing business in the neighborhood of Vinton does not impose a duty upon the company so indefinite that it cannot be controlled by the duly constituted public authorities having under existing statutes the control and regulation of the business and affairs of such public service corporations or companies. If the State Corporation Commission were called upon to determine the duty which defendant in error owes to persons, partnerships or corporations residing or doing business in the neighborhood of the town of Vinton, or to determine the extent of the authority of defendant in error to establish or to maintain its works in the neighborhood of the town, it would, in view of the surrounding circumstances and conditions, find no difficulty in reaching a conclusion as to what would be a reasonable and proper construction to be placed on the word "neighborhood" as used in the defendant in error's charter. Under the provisions of the statutes enacted for the control and regulation of public service corporations, to which we have adverted, the Corporation Commission would have the same power and authority to regulate and control the defendant in error as to the character of the service required of it with respect to individuals along the line of its works and in the neighborhood of the town of Vinton as it would have as to the character of any other service undertaken or furnished by the company.

"The right of an individual to a public use of water is in the nature of a public right possessed by reason of his status as a person of the class for whose benefit the water is appropriated or dedicated. All who enter the class may

demand the use of the water, regardless of whether they have previously enjoyed it or not." *Hildreth* v. *Monticello Creek Water Co.,* 139 Cal. 22, 30, 72 Pac. 395, 398.

The general principles, says the opinion of the court in *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77, is "When private property is affected by the public interest it ceases to be *juris privati* only. Property becomes clothed with the public interest when used in a manner to make it of public consequence and affect the community at large. When, therefore, one devotes his property to a use in which the public have an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use, but so long as he maintains the use, he must submit to the control."

The remaining contention of plaintiff in error is that the defendant in error has an abundant supply of water to comply with all of its charter duties and the water is not used for that purpose, and that this condemnation proceedings is for the purpose of getting additional water, so that the company may carry out large private contracts with the Norfolk and Western Railway Company for its shops and engines.

"The fact that the property taken is bestowed upon a person or corporation, and that private emolument results from its use, does not prevent the exercise of the power (of eminent domain) if the use is public, and if the public benefit is the object had in view in authorizing the taking. *   *   *   * So far as the State is concerned, the private emolument of the person or corporation conducting the enterprise is to be regarded merely as compensation for the benefit conferred on the public." Note to *Beekman* v. *Railroad Co., supra,* p. 690, and authorities there cited.

Being a public service corporation charged with the

duties imposed upon it as such, defendant in error is as much bound to perform those duties to the Norfolk and Western Railway Company, or any other corporation which may reasonably demand their performance, as it is to perform them with respect to private citizens, firms or partnerships, and if it refuses to supply water to any consumer who may make a reasonable demand therefor, whether a corporation, firm, partnership, manufacturing plant or individual, the Corporation Commission, under the laws of the State, has the power and authority to, and would doubtless, compel defendant in error to perform its duties in these respects. In other words, a railway corporation, or other corporation, or manufacturing plant, requiring large quantities of water, has the same right to be served by the water companies doing a public service business that any private individual has. A railway company or other corporation has the same right to demand that it be served by a public service water company that it has to demand service from a telephone company or any other public service corporation. The defendant in error having lawfully established itself as a public service corporation, supplying water in the city of Roanoke, the fact that it furnishes water to the Norfolk and Western Railway Company, under a contract, in no sense changes the character of its service from that of a public service, and in performing that contract it is but performing a public duty as much as it is in supplying water to any other citizen of Roanoke.

Upon the whole case we are of opinion that the judgment of the circuit court should be affirmed.

BUCHANAN and WHITTLE, JJ., *dissenting*:

We cannot concur in the opinion of the court in this case.

By act of the General Assembly of Virginia, approved March 4, 1890, the Vinton-Roanoke Light and Water Company was chartered for the purpose of supplying and furnishing light to the town of Vinton, Roanoke county, Virginia, and to such persons, partnerships, and corporations residing or doing business therein and in the neighborhood thereof as might desire to use the same. The court in its opinion has construed the word "neighborhood," as used in this charter, to include the city of Roanoke, a wholly distinct and separate municipality from the village of Vinton, distant therefrom several miles, and with a population of 40,000.

We understand the rule to be that the powers of such corporations, clothed with the right of eminent domain, are to be clearly defined; and that such powers are not to be extended by intendment beyond the reasonable import of the language used. As was said by the Supreme Court of the United States in *Rice* v. *Railroad Company*, 1 Black's Rep. 358, at p. 380, 17 L. Ed. 147, "if the meaning of the words be doubtful in a grant, designed to be a general benefit to the public, they shall be taken most strongly against the grantee and for the government, and therefore should not be extended by implication in favor of the grantee beyond the natural and obvious meaning of the words employed; and if those do not support the right claimed, it must fall. Any ambiguity in the terms of the contract, say the court in the case of the *Richmond R. R.* v. *The Louisa R. R. Co.*, 13 How. 81 [14 L. Ed. 55], must operate against the corporation and in favor of the public, and the corporation can claim nothing but what is given by the act. *Perrine* v. *Chesapeake Canal Co.*, 9 How. 192 [13 L. Ed. 92]. Taken together, these several cases may be regarded as establishing the general doctrine that whenever privileges are granted to a corporation and the grant comes under revision in the courts, such privileges

are to be strictly construed against the corporation and in favor of the public, and that nothing passes but what is granted in clear and explicit terms. *Ohio Life and Trust Co.* v. *Debolt,* 16 How. 435 [14 L. Ed. 997]; *Com.* v. *The Erie and N. E. Railroad Co.,* 27 Penn. 339; *Stour-bridge* v. *Wheeley,* 2 Barn. & Ad. 792; *Parker* v. *Great W. Railway Co.,* 7 M. & Gr. 253."

This rule, it seems to us, is specially applicable to a public service corporation, which not only possesses the power of eminent domain, but also owes important duties to the public. The language of the charter should, there-fore, be sufficiently explicit to leave no reasonable doubt as to what part of the public are entitled to demand their service.

"To constitute a public use the public must have a legal right to the use or service for which the property is taken. Where property is taken by private corporations or in-dividuals, it must not only appear that the purpose of the taking is a public use, but also that the public have a right to that use independent of the will of the condemning party." 1 Lewis on Eminent Domain (3rd ed), sec. 313.

In point of definiteness the language of the present char-ter falls far short of legal requirement. The territory in-tended to be included by the word "neighborhood" is not only indefinite in itself, but it is impossible of ascertain-ment.

As was said by the Supreme Court of Massachusetts in *Thomas* v. *Mansfield,* 10 Pick, 364, 367: "The grant in question was made to the inhabitants of a certain neigh-borhood, but the neighborhood is not defined with sufficient certainty, and its exact limits have not been ascertained." It was held that title under such grant could not be sus-tained.

In other words, the term "neighborhood" has no tech-nical legal signification, and, in common parlance, no fixed limitation as to distance, and is too uncertain to confer

the powers sought to be exercised under this charter. *Rice*
v. *Sims,* 3 Hill (S. C.), pp. 5, 7; *Aliso Water Co.* v. *Baker,*
95 Cal. 268, 270, 30 Pac. 537.

In *Esterly* v. *Cole,* 3 Comstock (3 N. Y.), 502, 505, it is
said that the word "neighborhood" meant the town or
place where the plaintiff carried on business, and not a
different town or place.

It is inconceivable, we think, that the legislature could
have intended by the use of the word "neighborhood," as
employed in this charter, to include the city of Roanoke, or
that a water company chartered to supply the little town
of Vinton and persons, etc., in its "neighborhood" could
be compelled to furnish water to the thirty or forty thou-
sand persons residing and doing business in that city.
If the water company could not be compelled to do this
under its charter (and that it could not seems clear to us),
then it would not have the right under its power of emi-
nent domain to condemn property in order to perform con-
tracts entered into with the people and corporations of
that city to furnish them water. For it clearly appears
that there is no necessity for condemning the property of
the plaintiff in error, except for the purpose of enabling
it to keep and perform its contracts in supplying water to
the people and corporations in the city of Roanoke. Since
its obligation to furnish water in that city results from
contractual relations and not from charter provisions im-
posing such duty—a duty which it could be compelled to
perform—it follows, as it seems to us, that this is a clear
case of taking private property for private use, contrary
to the law of the land and the fundamental principles of
a republican government. *Fallsburg* v. *Alexander,* 101
Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep.
*Miller, &c.,* v. *Town of Pulaski,* 109 Va. 137, 142, 63 S. E.
880, 22 L. R. A. (N. S.) 552.

*Affirmed.*