## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Kenneth Green
and Mollie Green

v.

Investors Home Mortgage
Corp. et al.

May 20, 1988

By JUDGE WILLIAM H. LEDBETTER, JR.

This is an action for damages brought by Kenneth and Mollie Green ("the Greens") against a mortgage company ("Investors") and one of its employees ("Donahue") based upon the defendants' failure to procure a policy of credit life and disability insurance, or an application for such insurance, in connection with a residential mortgage loan.

The Greens filed their motion for judgment on October 13, 1987, setting forth claims in tort and contract, and the defendants timely filed grounds of defense. After discovery, Investors and Donahue moved for summary judgment pursuant to Rule 3:18. At the same time, the parties agreed upon and filed a seven-paragraph stipulation of facts and a transcript of Kenneth Green's deposition testimony.

Arguments on the motion for summary judgment were heard on May 16, 1988, and counsel submitted memoranda. At the hearing, counsel reiterated their agreement that the court should consider the pleadings, stipulations (with documents attached), Kenneth Green's deposition, and the memoranda, in ruling on the motion. Therefore, the facts recited in this opinion are those that have been stipulated

by the parties, viewed in a light most favorable to the Greens.

## Facts

In the spring of 1987, the Greens became interested in the purchase of a home in Spotsylvania County. In their effort to obtain financing, they went to the local office of Investors on March 4, 1987, and met with Donahue. The loan process was explained to them, questions were answered, and several papers were signed.

One of those papers was a "Mortgage Loan Policy Statement." Paragraph 16 of that document provides:

> Mortgage Life Insurance is not required to obtain credit, and no such insurance will be applied for or provided unless you sign and agree to pay the additional cost.

The Greens indicated to Donahue that they wanted credit life and disability insurance in connection with their loan. In a space provided for their signatures, they wrote "yes" and signed the document at the bottom.

Also at that meeting, the Greens received, reviewed and signed a "Mortgage Loan Fact Sheet," which explained certain loan-related matters such as the survey, termite certificate, well and septic certification, and various types of insurance. As for credit life and disability insurance, paragraph 6 of the fact sheet stated:

> Mortgage Life/Disability Insurance: Insurance policies which will pay off the loan in the event of your death or disability are available. Should you desire further information about Mortgage Life/Disability Insurance, please contact your Loan Officer. This coverage is optional; it is not required as a condition of your loan.

Donahue filled out another form: "Amount Financed Itemization." This document was for the purpose of estimating the costs associated with the loan. Although estimated costs were hand written on almost every line provided

on the document, the lines opposite the items related to credit life and disability insurance were left blank. The Greens and Donahue signed the paper.

On March 11, 1987, the Greens received and signed a "Truth in Lending Disclosure Statement." The interest rate, finance charge, loan amount, total of payments, number and amount of installment payments, and other information, were typed onto the form. Near the bottom, language identical to paragraph 16 of the "Mortgage Loan Policy Statement" appears, but the boxes are left blank. Also on that date, the Greens signed a new "Amount Financed Itemization." On this form, every line was filled in. Opposite the item "Estimated Mortgage Life Insurance" is the figure "$0.00."

Because the interest rate changed prior to settlement, the Greens were given another "Truth in Lending Disclosure Statement" on June 1, 1987. They signed the document, leaving blank the appropriate boxes pertaining to application for credit life and disability insurance.

After the initial meeting between the Greens and Donahue on March 4, 1987, nothing further was said by anyone about this insurance.

The Greens closed on their house, purchasing it with funds borrowed from Investors. There was no discussion of this insurance at the closing, and they paid no premium for it.

Shortly thereafter, Mr. Green was diagnosed as suffering from cancer. He became disabled as a result of the illness.

Mollie Green made inquiry of Investors as to the procedure for filing a claim for payments under their credit life and disability policy. When they were informed that no such policy existed, this litigation ensued.

### The Contract Claim

The Greens assert that a contract existed between them and Investors whereby Investors would "provide them with either an application for credit life and disability insurance or the insurance itself, this contract having been formed on March 4, 1987." Investors breached that contract, the Greens argue, when it failed to procure

the insurance or even to provide them an application so that they could obtain the policy themselves.

A contract is an agreement between two competent parties, supported by consideration, to do or not to do a particular thing. The minds of the parties meet and concur upon the material terms of their undertaking, and a legal relation is created.

Ordinarily, a contract is formed by one party making an offer and the other party accepting that offer. In oral argument, counsel for the Greens took the position that when Investors presented the "Mortgage Loan Policy Statement" to the Greens on March 4, 1987, that act constituted an offer, which the Greens accepted by writing "yes" in the spaces in paragraph 16, dating and signing the paper, and handing it back to Donahue. Thus, the argument goes, a contract was created.

Examining the "Mortgage Loan Policy Statement" in a light most favorable to the Greens, the court rejects that analysis for several reasons.

An offer is a proposal of terms upon which the offeror is willing to be bound if the offer is accepted by the person to whom it is made. An offer is an expression of a willingness to undertake an obligation. The obligation that the offeror is willing to undertake must be ascertainable from the terms of the offer. *See* 4B M.J., *Contracts* sect. 17.

Applying these well-recognized principles to the Greens' analysis, what terms were Investors proposing to which it intended to be bound? It is obvious from a fair reading of the Statement form that Investors was not intending to be bound by anything at that point. Investors was making no proposal or promise at all, and, therefore, there was nothing for the Greens to accept. Instead, the form contained information with respect to the loan process, and provided various blank spaces so that the borrowers could indicate certain preferences in the event the parties consummated their prospective transaction. The Greens' signatures were an acknowledgment of their receipt of this information.

Focusing upon paragraph 16 in particular, it is again obvious that Investors did not intend by that form language to make a proposal for an undertaking to which it would be bound. The clause plainly and simply informed

the applicants that no credit life and disability insurance would be applied for *unless* they signed the spaces provided *and* agreed to pay the premium. This concise statement, or informational item, or warning, however it may be characterized, was not an offer because it did not propose by its terms to obligate Investors to do anything.

We turn now to the second phase of the analysis.

An acceptance is a promise to be bound by the terms of the offer, so that there is a meeting of the minds and, thus, agreement as to the terms of the undertaking. *See* 4B M.J., *Contracts* §§ 18, 21, 22. What did the Greens promise to do by filling out, dating, signing, and returning the Statement? They promised nothing; they did not agree to do anything; they were not obligated to Investors upon any undertaking. Their signatures on the document did not commit them to purchase the loan or to purchase the insurance.

Aside from the flaws in the Greens' offer-and-acceptance analysis, the document is not a contract. It is not intended or designed as a statement of terms of an undertaking between parties mutually bound. It establishes no obligations or commitments, and creates no legal relation. It is merely an informational sheet, coupled with spaces in which prospective borrowers may indicate preferences regarding certain aspects of the loan process.

In order for a contract to exist based upon two parties' exchange of promises as consideration, mutuality of obligation is essential. Each party must have the right to hold the other to a positive agreement. Both parties must be bound or neither is bound. *Vinton v. Roanoke*, 195 Va. 881 (1954). No mutual obligation was intended or created in this case.

In addition to signing the "Mortgage Loan Policy Statement," the Greens engaged in conversation with Donahue concerning their desire to acquire credit life and disability insurance in connection with any loan that they might eventually obtain. Without dissecting those discussions in detail, the court concludes that the verbal exchange of March 4, 1987, standing alone or considered together with the "Mortgage Loan Policy Statement," was not intended to, and did not, as a matter of law, create a contractual relationship, for any undertaking between the Greens and Investors.

For the foregoing reasons, the Greens' contract claim must fail.

### The Tort Claim

Alternatively, the Greens contend that they are entitled to recover on a theory of negligence.

Negligence is defined as the failure to exercise ordinary care. Ordinary care is that degree of care which a reasonable and prudent person would exercise under similar circumstances. Negligence involves breach of a legal duty, i.e., the breach of an obligation or responsibility that the law requires to be done or foreborne with respect to a determinate person or group of persons, correlative to a right in such person or group of persons.

> Where there is no legal duty to take care, owed by one person to another in respect to the safety of the person or property of such other, there can be no actionable negligence. There is no such thing as negligence in the abstract or in general. It must be in relation to some person. . . .
>
> To constitute actionable negligence there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. The injury resulting from an act which breaches no duty is "damnum absque injuria." 13B M.J. *Negligence* § 13.

In most negligence litigation, duty is not a contested issue. For instance, in automobile accident cases, the duties of a motorist to other motorists, passengers and pedestrians are well-defined. In such cases, the disputed issues generally are whether the defendant breached his duty, causation, and damages. Here, however, the essential question is whether Investors had any duty at all.

As a result of the meeting of March 4, 1987, the Greens had absolutely no obligation to Investors to do anything with respect to the transaction they discussed and, similarly, Investors had no transactional obligation to the Greens. Neither contractually nor otherwise had

the parties, at that point, created any sort of relationship which encompassed legal rights and duties with respect to the prospective transaction (the loan) under discussion, or any aspect of it.

Even assuming that things were said, verbally and in writing, at the parties' initial meeting which could have developed into enforceable rights and duties regarding the insurance coverage, certain significant events transpired between the date of that meeting and settlement which cannot be ignored. For example, the Greens signed two "Truth in Lending Disclosure Statements" that contained spaces in which the borrowers could indicate whether they desired credit life and disability insurance. In both instances, the Greens chose to leave those spaces blank. On March 11, 1987, the Greens signed a new "Amount Financed Itemization" which clearly shows "$0.00" next to the item labeled "Estimated Mortgage Life Insurance." They never said anything else to Donahue or any other employee of Investors about such insurance. They did not mention the issue at settlement despite the fact that the settlement statement reflected the fact that no premium was charged for such insurance.

Under the facts and circumstances here presented, not disputed, Investors owed no legal duty to the Greens with respect to credit life and disability insurance which could give rise to an action for negligence.

### Conclusion

Rule 3:18 permits summary judgment only where no material fact is genuinely in dispute. Here, the parties have submitted the question upon the pleadings, stipulations of facts (with attached documents), the deposition of Kenneth Green, and memoranda. Considering the pleadings and admitted facts as a whole, in a light most favorable to the Greens, the court concludes that (1) there are no facts material to this controversy genuinely in dispute, and (2) based upon these undisputed facts, the Greens are not entitled to the relief which they seek under either theory asserted, for the reasons explained above.

Accordingly, the motion for summary judgment will be granted and judgment will be entered in favor of the defendants.